UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, LOCAL 3369,                                          23 Civ. 3595

                      Plaintiff,                               **COMPLAINT**

       –against–

UNITED STATES SOCIAL SECURITY
ADMINISTRATION,

                      Defendant.

------------------------------------------------------------------X

## INTRODUCTION

1. Plaintiff, American Federation of Government Employees, Local 3369 (hereinafter "AFGE" and "Local 3369") brings this action to remedy violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. 552 by the Social Security Administration's (hereinafter "SSA") failure to respond to AFGE's FOIA requests. AFGE filed a FOIA request with SSA on January 12, 2022 seeking emails that SSA designated as *Agency's Privilege Log*.

2. Prior to the date leading up to the FOIA request, SSA refused to provide emails contained in the *Agency's Privilege Log* pertaining to communications surrounding the issuance of Executive Order 14003 and in doing so relied solely on 5 U.S.C. 7114(b)(4)(C) claiming this provision of the Civil Service Reform Act of 1978 relieved it from providing AFGE information which "... constitutes guidance, advice, counsel or training provided for management officials or supervisors, relating to collective bargaining."

3. SSA's refusal to provide the emails from the *Agency's Privilege Log* interfered with AFGE's statutory right and obligations pursuant to 5 U.S.C. 7101(a)(1)(C) to "...facilitate(s)

and encourage(s) the amicable settlement of disputes involving employees and their employers involving conditions of employment."

4.     AFGE filed the instant FOIA request in the midst of a dispute pertaining to the denial of Union office space caused by President Trump's Executive Order 13817, which was rescinded by President Joe Biden on January 22, 2021 in Executive Order 14003.

5.     Central in that dispute, AFGE relied upon Executive Order 14003 to restore Union Office space; the communications sought and that were listed in the *Agency's Privilege Log* referenced President Biden's Executive Order 14003 and were drafted around the same time Executive Order 14003 was issued, e.g., with the first email was written less than three (3) days after the issuance of Executive Order 14003.

6.     There was no "... guidance, advice, counsel or training provided for management officials or supervisors, relating to collective bargaining" at the time of the original request that the FOIA request was made.

7.     The collective bargaining agreement was executed in September 2019 with an expiration date in 2025.

8.     After eight (8) months of excuses, SSA denied the FOIA request on August 3, 2022 once again relying solely on 5 U.S.C. 7014(b)(4)(C).

9.     By failing to provide the requested emails contained in the *Agency's Privilege Log*, SSA is impeding AFGE's access to government information generated by taxpayer funding, which information is necessary for AFGE to fulfill its statutory mandated mission and obligations, as noted in paragraph 4, above.

10. Having constructively exhausted its administrative remedies with SSA, AFGE now turns to this Court to enforce FOIA's guarantee of public access to agency records and to remedy SSA's withholding of that access.

11. Accordingly, AFGE asks this Court to: 1) declare that SSA has violated FOIA by denying AFGE's request and withholding the requested records; 2) order SSA to immediately provide AFGE with a legally compliant response to its outstanding document request; 3) order SSA to promptly provide AFGE all the emails contained in the *Agency's Privilege Log;* and 4) grant other appropriate relief including attorney fees and costs in accordance with *Id.* 552(a)(4)(E).

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28. U.S.C. 1331 (Federal Question) and 5 U.S.C. 522(a)(4)(B) (FOIA).

13. Venue is proper in this District pursuant to 5 U.S.C. 552(a)(4)(B) as SSA's Regional Commissioner and Regional Headquarters are located in this District at 26 Federal Plaza, New York, NY; and the Regional Commissioner's Office and its Office of Management & Employee Relations (OMER) have demonstrated they have access to SSA records located at its Baltimore Headquarters; and venue is also proper in accordance with 38 U.S.C. 1391(b) and (e)(1) as events giving rise to this action occurred in this District.

14. This Court has authority to grant the requested relief in this case pursuant to 5 U.S.C. 552(a)(4)(B), (E) and the Declaratory Judgment Act, 29 U.S.C. 2201-2202.

## PARTIES

15. Plaintiff American Federation of Government Employees, Local 3369 is a labor organization as defined by 5 U.S.C. 7103(4) and that according to 5 U.S.C. 7101(a)(1)

safeguards the public interest, contributes to the effective conduct of public business and facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment. AFGE Local 3369 represents approximately 1000 bargaining unit employees assigned to forty-one (41) field offices throughout the five (5) boroughs of New York City, and all of Westchester, Nassau and Suffolk Counties, New York. The mission of Plaintiff AFGE Local 3369 is to represent bargaining unit employees, employed by SSA, in all matters related to wages, hours of work and conditions of employment covered by a current collective bargaining agreement known as the National Agreement with an effective in October 2019 and an expiration date in October 2025. The purpose of AFGE's representation is to enforce the collective bargaining agreement; and it does so by filing grievances on behalf of the Union and employees and represents employees who have themselves filed grievances alleging that SSA has violated the collective bargaining agreement; and upon failure to resolve grievances, AFGE has the right to refer unsettled grievance to arbitration where the decision of the arbitrator is final and binding. And in furtherance of its duties and obligations as the exclusive representative of bargaining unit employees, AFGE Local 3369 may request and SSA has an obligation pursuant to 5 U.S. C. 7114(b)(4) to furnish information requested by AFGE that is not prohibited by law, is maintained by the agency in the course of business, is necessary for full and proper discussion of collective bargaining matters and "which does not constitute guidance, advice, counsel or training provided for management officials or supervisors, relating to collective bargaining.

      16.    Defendant Social Security Administration is an independent agency of the United States government. The principal office and the FOIA office of SSA are located in Baltimore

MD. SSA is in possession of the records that AFGE seeks and therefore is subject to FOIA pursuant to 5 U.S.C. 552(f).

## **STATUTORY BACKGROUND**

17. FOIA's basic purpose is to ensure government transparency and the expeditious disclosure of government records. FOIA creates a statutory right of public access to agency records by requiring that federal agencies make records available to any person upon request. *Id.,* at 552(a)(3)(A).

18. FOIA imposes strict deadlines on federal agencies to respond to requests. FOIA requires an agency to issue a final determination resolving an information request withing twenty (20) business days from the date of its receipt and to immediately notify the requester of its determination and the reasons therefore. *Id.,* at 552(a)(6)(A)(i). This provision requires the agency to "(i) gather and review the documents; (ii) determine and communicate the scope of the agency's documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."

19. An agency may extend this 20-day period only in "unusual circumstances" as defined by 5 U.S.C. 552(a)(6)(B)(iii), and only for a maximum of ten (ten) working days. *Id.* Sec. 552(a)(6)(B)(i); *see also* 15 C.F.R. 4.6(d)(1).

20. Agencies are required to provide "an estimated date on which the agency will complete action on the request" whenever a request will take more than 10 days to resolve. 5 U.S.C. 552(a)(7)(B).

21. The agency must then make the requested records "promptly" available. *id.* Sec. 552(a)(3)(A). In so doing, the agency must make reasonable efforts to search for records in a manner reasonably calculated to locate all records responsive to the FOIA request. *Id.* Sec.

552(a)(3)(C), (D). However, in the instant case, there was no search necessary as SSA admitted that the emails in the *Agency's Privilege Log* were in its possession and readily available.

22. Plaintiff AFGE understands that the agency may withhold from production the limited classes of records exempted under 5 U.S.C. 552(b) and in regard to collective bargaining and a Union's right to request documentation, the agency is relieved from producing documents which "...constitute advice, counseling or training for management officials or supervisors, relating to collective bargaining. 5 U.S.C. 7114(b)(4)C. The Plaintiff asks this honorable Court to take Judicial Notice that for purposes of fulfilling the Union's statutory obligations and right to request information,

23. The grievance and arbitration procedure are considered a continuation of collective bargaining.

24. For any record withheld, the agency bears the burden of proving that one of the statutory exemptions applies. 5 U.S.C. 552(a)(4)(B). Even if some information is exempt from disclosure, "any reasonably regrettable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." *Id.* Section 552(b).

25. An agency's failure to comply with any of FOIA's deadlines constitutes a
    constructive denial of the request, and the requester's administrative remedies are deemed exhausted for purposes of Litigation. *Id.* Sec. 552(a)(6)(C)(i).

## STATEMENT OF FACTS

26. In May 2017 President Trump issued Executive Orders 13826, 13837 & 13839 designed to minimize the effectiveness of federal employee unions; put a distance between federal employee unions and the employees they represent; and denying and depriving federal

agency employees the rights and privileges that they have exercised since the passing of the Civil Service Reform Act of 1978.

27. Particularly, Executive Order 13837 reduced federal employee unions' Official Time to represent federal employees to one (1) hour per employee per year; restricted the unions' ability to grieve certain discipline and evicted unions from federal buildings where they occupied office space for decades; and eliminated the unions' access to phone, internet and other electronic services in furtherance of their duty to represent bargaining unit employees.

28. On January 22, 2021, one day after his inauguration, President Joe Biden issued Executive Order 14003 – *Protecting the Federal Worker*. Executive Order 14003 revoked and rescinded former President Trump's anti-union Executive Orders enumerated in paragraph 26, above.

29. On March 5, 2021 the Office of Personnel Management issued its *Guidance for Implementation of Executive Order 14003 – Protecting the Federal Workforce.* The *Guidance* addressed all of the Trump Executive Orders and directed all Federal Agency Heads to revisit and identify any changes in policy or collective bargaining agreements that reflected implementation of the Trump Executive Orders.

30. The *Guidance* further directed Federal Agency Heads to "...engage the impacted unions as soon as possible" and that once done, and "as soon as practicable, suspend, revise or rescind the actions covered in any agency policy.

31. The *Guidance* included collective bargaining agreements and provisions that were the result of the Federal Impasse Panel; and in regards to the Trump Executive Order 13837, the *Guidance* made specific reference to official time and union office space.

32. Due to the expiration of the 2012 National Agreement between SSA and AFGE National, the parties were engaged in collective bargaining for a new National Agreement.

33. As of September 25, 2019, SSA had not agreed to one single provision more favorable to the Union with many demands for "give backs". Included was SSA's refusal to allow the local Unions, including Plaintiff AFGE Local 3369, to return and reoccupy the union office space it had occupied for decades.

34. On or about September 27, 2019 AFGE National's negotiating team signed a draft agreement under duress to accept the terms offered by SSA, which included an increase of Official Time hours to more than one (1) hour per member; which draft agreement was signed under duress and with the caveat that if they did not sign it, there would be no collective bargaining agreement and all of the provisions of the Trump Executive Orders would go into effect.

35. In March 2021 Plaintiff AFGE Local 3369, pursuant to the *Guidance* as it pertained to union office space, made a request of the Flushing Area District Manager to restore the union office space from which the Plaintiff was evicted as a result of Executive Order 13837. This request was denied.

36. In response to a subpoena for records filed served during the course of a grievance involving the above disputes SSA produced an *Agency Privilege Log*.

37. The *Agency's Privilege Log* contains six (6) emails four (4) of which were written by the top three (3) SSA officials responsible for the Office of Labor Management & Employee Relations (OLMER); and two (2) of which OLMER is designated as the author.

38.     Each email designated Executive Order 14003 and the *Guidance* as the **Subject Matter** of the email with the **Explanation** being "Internal Guidance", all but two (2) were written before the official *Guidance* was published by OPM on March 5, 2021.

39.     The earliest email listed on the *Agency's Privilege Log* is dated January 25, 2021 just three (3) days after the issuance of Executive Order 14003. Subsequent emails on the *Agency's Privilege Log* are dated: February 3, February 9, March 17 and March 19, 2021, with one date marked as "unknown."

40.     At the time the first email contained in the *Agency's Privilege Log* was written, the collective bargaining agreement had already been in effect two (2) years and four (4) months with effective date of October 27, 2019. And the last email contained in the *Agency's Privilege Log* was written four (4) years and six (6) months prior to the expiration of the collective bargaining agreement.

41.     Based on paragraph 47, above, it is reasonable to conclude that the emails contained in the *Agency's Privilege Log* had nothing to do with collective bargaining. And it is therefore reasonable to conclude that SSA simply did not want AFGE Local 3369 to see what its highest-level labor relations officials had written about Executive Order 14003 which the grievance before Arbitrator O'Connell contends SSA was not in compliance with.

### LOCAL 3369's REQUEST FOR RECORDS FROM SSA's FOIA OFFICE

42.     On January 12, 2022 through its Counsel, AFGE Local 3369 made a Freedom of Information Act Request from SSA's FOIA Public Liaison and Dr. Kilolo Kijakazi, A/Commissioner SSA. The FOIA request contained a detailed letter and a copy of the *Agency's Privilege Log,* with all the employee names and dates of the emails.

43. The stated purpose of the FOIA request is that: "The public and the Union has the right to know the contents of the documents requested and denied as it is more likely than not that they contain information as to the reason the SSA is not in compliance with President Biden's Executive Order 14003 and in violation of Article 1 Section 1 of the 2019 National Agreement.

44. On April 12, 2022 Counsel for AFGE Local 3369 wrote a letter to SSA Office of Privacy and Disclose referencing the original FOIA request of January 12, 2022 and the fact that no response had been received.

45. On April 15, 2022 SSA's FOIA Public Liaison emailed Counsel for AFGE Local 3369 stating that his "... email address had been mistyped when creating your request in our processing system," and that, as such, he never received SSA's request for additional information.

46. Incredibly and in spite of the detailed information contained in the January 12, 2022 FOIA request letter and the *Agency Privilege Log,* as noted in paragraph 52, above, SSA's April 15, 2022 request for additional information amounted to no more than a 'boiler plate' response and stated: "Please tell us what employee mail boxes to search, what date ranged you would searched, and if there should be any keywords or names used."

47. Counsel for AFGE Local 3369 responded to the April 15, 2022 mistyping and boiler place response by resubmitting its January 12, 2022 letter with package containing the *Agency's Privilege Log.*

48. On August 3, 2022 Michelle L. Christ, A/Freedom of Information Act Officer denied AFGE Local 3369's January 12, 2022 FOIA request. SSA stated it was withholding the records requested by once again relying on 5 U.S.C. 7114(b)(4)(C); and by also relying on

Exemption 2 of the FOIA (5 U.S.C. 552(b)(2)) which SSA claims exempts it "...from mandatory disclosure of records "related solely to the internal personnel rules and practices of an agency, such as internal agency email control addresses and office fax numbers."

49.     AFGE Local 3369 asserts that if controlling agency email addresses and office fax numbers are the best examples offered to exempt SSA from providing emails from known individuals with known email and fax numbers, then any claim of this exemption is bogus, to say the least. Also, no "internal personnel rules and practices" of the agency were disclosed to justify this exemption.

50.     The August 3, 2022 denial of AFGE Local 3369's FOIA request also invoked Exemption 5 (5 U.S.C. 552(b)(5)) which protects the decision-making processes of the executive branch "in order to safeguard the quality and integrity of governmental decisions." In this regard, there was no decision making involved at the time of the *Agency's Privilege Log*. As noted above, the collective bargaining agreement was already negotiated and in effect for almost two and half years prior to the request for the emails in the *Agency's Privilege Log* with future negotiations more than three (3) years away. What is more, the ink on Executive Order 14003 wasn't even dry when the first email was written and the *Guidance* had not yet been published. There was nothing to 'protect' at the time the FOIA request was made; and if exposure of those documents could cause harm, it is only because the contents of those emails were the result of bad intent regarding Executive Order 14003. Additionally, there is not indication that the drafter of the August 3, 2022 denial of the FOIA request read or had access to those emails.

51.     The August 3, 2022 denial of the AFGE Local 3369's FOIA request also invoked Exemption 6, as found in 5 U.S.C. 552(b)(6) which does not require the disclosure of third-party personal information that would be clearly unwarranted invasion of personal privacy. Nothing in

11

AFGE Local 3369's FOIA request has the intent nor will it invade the personal privacy of any federal employee or member of the public. Exemption 6 was not intended to protect wrongdoing by a federal employee; and disclosure of wrongdoing was not intended by the statue to be an "invasion of personal privacy" just as there is no attorney/client privilege where information and conversation exchanged contemplate fraud or other criminality.

52. There is no indication that any persons involved in denying AFGE Local 3369's FOIA request has seen the contents of the *Agency's Privilege Log*. The Exemptions relied upon by the SSA's Acting Freedom of Information Officer are wanting and without legitimate basis to sustain their being withheld. These documents are the result of taxpayer generated funds regarding Executive Order 14003 and are not in the context of collective bargaining, nor does the subject matter assigned to each email "... constitute guidance, advice, counsel or training provided for management officials or supervisors, relating to collective bargaining." AFGE Local 3369 contends that 5 U.S.C. 7114(b)(4)(C) is the one and only controlling statute to be relied upon to determined the outcome of this FOIA request.

53. On October 25, 2022 Counsel for AFGE Local 3369 appealed the decision of the Acting Freedom of Information Officer dated August 3, 2022. The appeal was made to Matthew D. Ramsey, Executive Director, Office of Privacy and Disclosure, SSA, Baltimore MD.

54. As of this date there has been no response by the Executive Director or any other official of SSA to this appeal.

55. On October 28, 2022 Counsel for AFGE Local 3369 made a request for Mediation Service of the Office of Government Information Service, National Archives and Records Administration.

56. There has been no response to the request for Mediation Services.

57. Despite the diligence of AFGE Local 3369 in pursuing its FOIA request, SSA has responded with a suspicious admission of incompetence, followed by a delayed response with reliance on unrelated Exemptions the appeal of which was once again responded to with silence. Additionally, SSA made no attempt to comply with the time limits provided by the statute nor did is request additional time to respond to AFGE Local 3369. SSA's reluctance to provide the contents of the *Agency's Privilege Log* combined with the its failure to abide by Executive Order 14003 while no collective bargaining was in sight, can be seen as indicia of mal-intent by the authors of the emails as they pertain to compliance with Executive Order 14003 and the agency's response to that Executive Order which was less than enthusiastic as compared to its immediate compliant response to the Trump union-busting Executive Orders.

## FIRST CAUSE OF ACTION

**(Injunctive and Declaratory Relief)**
**Failure to Respond to AFGE's FOIA Requests**

58. Plaintiff repeats and re-alleges the allegations made in paragraphs 1-57 as if fully set forth herein.

59. SSA is an "agency under FOIA, 5 U.S.C. 552(f)(1) and SSA has possession and control of the requested records.

60. SSA was required and failed to provide a determination within twenty (20) working days on AFGE Local 3369's FOIA request dated January 12, 2022. *Id.* 552(a)(6).

61. SSA was required to provide an "estimated date on which the agency [would] complete action on the request. *Id.* 552(a)(7)(B).

62. SSA has not responded to AFGE Local 3369's timely appeal of the August 3, 2022 denial of its FOIA request.

63. SSA has not provided the documents requested by AFGE Local 3369's FOIA request as provided by law. *Id.*

## REQUEST FOR RELIEF

WHEREFORE, AFGE Local 3369 prays that this honorable Court:

1. Declare that SSA failed to make a timely determination on AFGE Local 3369's records request in violation of FOIA, 5 U.S.C. 552(a)(6),(7);

2. Declare that SSA failed to promptly provide records in response to AFGE Local 3369's information request in violation of 5 U.S.C. 552(a)(3), (b);

3. Order SSA to provide the documents contained in the *Agency's Privilege Log* to AFGE within ten (10) days of the Court's order;

4. Maintain jurisdiction over this action until SSA is in compliance with FOIA and every order of this honorable Court;

5. Award AFGE Local 3369 its costs and reasonable attorney fees pursuant to 5. U.S. C. 552(a)(4)(E) or 28 U.S.C. 2412; and

6. Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York
April 28, 2023

      ADVOCATES FOR JUSTICE,
      CHARTERED ATTORNEYS
      Attorneys for Plaintiff

      By: /s/ *Laine Alida Armstrong*
          Laine Alida Armstrong
      225 Broadway, Suite 1902
      New York, New York 10007
      (212) 285-1400
      laine@advocatesny.com