UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, LOCAL 3369,

          Plaintiff,

    v.

UNITED STATES SOCIAL SECURITY
ADMINISTRATION,

          Defendant.

23-CV-03595-LTS

---

MEMORANDUM OPINION AND ORDER[1]

Plaintiff American Federation of Government Employees, Local 3369 ("Plaintiff"
or "AFGE, Local 3369") brings a one-count action against Defendant United States Social
Security Administration ("Defendant" or "SSA") for violation of the Freedom of Information
Act ("FOIA"), 5 U.S.C. section 552. (Docket entry no. 6 ("Am. Compl.").) Plaintiff claims
procedural violations of 5 U.S.C. sections 552(a)(6)(A)(i), 552(a)(6)(B)(ii), and 552(a)(7)(B)(ii),
as well as a substantive violation of 5 U.S.C. section 552(a)(3) for improperly withholding
certain documents. (Id. ¶¶ 59-63; id. at 13-14.) Plaintiff seeks declarations regarding the
allegations of procedural noncompliance and orders for the disclosure of material that Plaintiff
claims has been withheld improperly. In response, Defendant moves to dismiss the Amended
Complaint under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary
judgment under Rule 56. (Docket entry no. 14.) The Court has subject matter jurisdiction under
28 U.S.C. section 1331 and 5 U.S.C. section 552(a)(4)(B). The Court has considered carefully

---

[1]    All pincites to materials filed on the docket refer to ECF-designated pages.

the parties' submissions.  (Docket entry no. 15 ("Def. Mem."); docket entry no. 16 ("Christ Decl."); docket entry no. 21 ("Pl. Opp."); docket entry no. 22 ("Def. Reply")).  For the following reasons, Defendant's motion for summary judgment dismissing the amended complaint is granted.

I.    BACKGROUND

The following background summarizes the pertinent allegations of the Amended Complaint (docket entry no. 6) and the facts proffered by Defendant through the Declaration of Michelle Christ (docket entry no. 16), who was the Deputy Executive Director for the Office of Privacy and Disclosure in the Office of the General Counsel and the Social Security Administration.  The parties' submissions reveal no material disputed facts.

A.    The 2017 Executive Orders

In May 2017, President Donald Trump issued Executive Orders 13826, 13837, and 13839 (the "2017 Executive Orders").  (Am. Compl. ¶ 27.)  These Executive Orders were designed to minimize the effectiveness of federal employee unions, put a barrier between such unions and the employees they represent, and deny and deprive federal employees of certain rights and privileges.  (Id.)  In particular, Executive Order 13837 evicted unions from federal buildings that they had occupied for decades.  (Id.)

B.    The Collective Bargaining Agreements

In 2012, the American Federation of Government Employees ("AFGE National") and Defendant SSA had entered into a collective bargaining agreement (the "2012 National Agreement").  (Id. ¶ 33.)  The 2012 National Agreement appears to have expired in 2016.  (See id. ¶ 41.)

Negotiations on a new collective bargaining agreement continued into September 2019, alongside AFGE National's legal challenges to the 2017 Executive Orders.  (Id. ¶ 34); see Am. Fed'n of Gov't Emps., AFL-CIO v. Trump, 318 F. Supp. 3d 370, 377 (D.D.C. Aug. 25, 2018), rev'd and vacated, 929 F.3d 748 (D.C. Cir. July 16, 2019), rehearing en banc denied (Sep. 25, 2019) (dismissing AFGE National's challenges to the 2017 Executive Orders for lack of subject matter jurisdiction).  On September 27, 2019, a few days after AFGE National's challenges to the 2017 Executive Orders were dismissed, AFGE National entered into a collective bargaining agreement with Defendant.  (Am. Compl. ¶ 35.)  Plaintiff alleges that AFGE National signed the agreement under "duress" because Defendant threatened to fully enforce the 2017 Executive Orders.  (Id.)

C.      The 2021 Executive Order

On January 22, 2021, President Joseph Biden issued Executive Order 14003, "Protecting the Federal Workforce," which revoked and rescinded the 2017 Executive Orders. (Id. ¶ 29.)

On March 5, 2021, the Office of Personnel Management issued its "Guidance for Implementation of Executive Order 14003 – Protecting the Federal Workforce" (the "Guidance") (Id. ¶ 30.)  The Guidance directed all federal agency heads to revisit and identify any changes in policy or collective bargaining agreements that reflected implementation of the 2017 Executive Orders, as well as to engage the affected unions "as soon as practicable" and "suspend, revise or rescind the actions covered in any agency policy."  (Id. ¶¶ 30-31.)  Guidance 14003 also specifically rescinded the office space eviction imposed by the 2017 Executive Orders.  (Id. ¶ 32.)

D.    The Office Space Dispute

Shortly after the Guidance was issued, Plaintiff made a request to restore its union office space, from which it had been evicted under the 2017 Executive Orders.  (Id. ¶ 36.)  This request was denied by the Flushing Area District Manager.  (Id.)

Plaintiff subsequently filed a grievance against Defendant and, during the course of the grievance dispute, Plaintiff served on Defendant a subpoena for records.  (Id. ¶ 37.)  In response to the subpoena, Defendant asserted privilege and produced an "Agency Privilege Log," which withheld five emails and one conference call.  (Id. ¶ 38; docket entry no. 16-1 ("Christ Decl. Ex. 1") at 4.)  The Agency Privilege Log (Christ Decl. Ex. 1, at 4) is reproduced below:

| Type of Document | Author | Recipient | Date | Title/ Description | Subject Matter | Privilege Claimed | Explanation |
|---|---|---|---|---|---|---|---|
| Conference Call Agenda | Katherine Hannah | Employee Relations/ Labor Relations | Unknown | Agenda | Executive Order 14003 | Guidance | Topics for call regarding 14003 guidance |
| Email | Joe Sullivan | OLMER | 2/3/2021 | Information on Executive Order on Protecting the Federal Workforce | Addressing union emails regarding Executive Order 14003 | Guidance | Internal guidance on addressing emails |
| Email | Jim Julian | OLMER | 1/25/2021 | Information on Executive Order on Protecting the Federal Workforce | Executive Order 14003 and union demands | Guidance | Internal guidance on 14003 |
| Email | Joe Sullivan | OLMER | 2/9/2021 | Initial Guidance on Executive Order on Protecting the Federal Workforce | Initial Guidance on Executive 14003 | Guidance | Internal guidance on 14003 |

| Type of Document | Author | Recipient | Date | Title/ Description | Subject Matter | Privilege Claimed | Explanation |
|---|---|---|---|---|---|---|---|
| Email | OLMER | OLMER | 3/17/2021 | Supplemental Guidance on Clean Records | Clean Record guidance under the executive orders | Guidance | Internal Guidance on 14003 and 13839 |
| Email | OLMER | OLMER | 3/19/2021 | Internal Guidance on EO 14003 | Updated guidance on implementation of 14003 | Guidance | Internal Guidance on 14003 |

Five of the six withheld communications were sent to OLMER, which is

Defendant SSA's Office of Labor-Management and Employee Relations.  (Christ Decl. ¶ 12.)

OLMER is a component within SSA's Office of the Deputy Commissioner ("DHCR").  (Id.)

DHCR directs the administration of SSA's human resources programs, including personnel

management, labor management, employee relations, and training.  (Id. ¶ 13.)  OLMER manages

SSA's labor management and employee relations program, including the development and

evaluation of the program and the formulation of SSA-wide labor management and employee

relations policy.  (Id.)  OLMER also provides guidance and advisory services on a broad range of

labor management and employee relations issues and matters, including on the interpretation of

the union management agreements.  (Id.)  Katherine Hannah, Joe Sullivan, and Jim Julian are the

top three SSA officials responsible for OLMER.  (Am. Compl. ¶ 38.)

E.    The FOIA Dispute

In response to Defendant's assertion of privilege against Plaintiff's subpoena, Plaintiff made a FOIA request for the withheld communications.[2]  (Christ Decl. ¶ 5; Christ Decl. Ex. 1.)  On August 3, 2022,[3] SSA's Office of Privacy and Disclosure ("ODP") denied Plaintiff's FOIA request.  (Christ Decl. ¶ 8; Am. Compl. ¶ 49; docket entry no. 16-4.)  On October 25, 2022,[4] Plaintiff appealed the denial (Christ Decl. ¶ 9; Am. Compl. ¶ 54; docket entry no. 16-5), and on April 27, 2023, OPD affirmed its denial (Christ Decl. ¶ 10; Am. Compl. ¶ 55; docket entry no. 16-6).  On April 28, 2023, Plaintiff filed the instant action seeking relief under FOIA, and the action was transferred to the undersigned on November 4, 2025.  (Christ Decl. ¶ 11; see docket entry nos. 1, 6, 26.)

II.    DISCUSSION

Defendant moves to dismiss the Amended Complaint or, in the alternative, for summary judgment.  Because Defendant has relied on evidence outside the pleadings, namely the Declaration of Michelle L. Christ (docket entry no. 16), the Court elects to treat Defendant's motion as one for summary judgment.  See Reclaim the Recs. v. U.S. Citizenship & Immigr.

---

[2]    Plaintiff contends that it filed its FOIA request on January 12, 2022.  (Am. Compl. ¶ 43.) Defendant claims that it received that request on February 6, 2022, albeit via a procedurally improper method.  (Christ Decl. ¶ 5.)  Furthermore, a clerical error caused Defendant to send email correspondence to the wrong email address for Plaintiff, and this error was not discovered until April 13, 2022.  (Id. ¶¶ 5, 7.)  On April 15, 2022, after fixing the email address issue, Defendant emailed Plaintiff a request for clarification, and Plaintiff responded on April 22, 2022.  (Id. ¶ 7.)  Subsequently, Defendant issued its FOIA decision on August 3, 2022.  (Id. ¶ 8.)

[3]    The denial letter is dated August 3, 2022, but Defendant states that it sent the letter on August 4, 2022.  (Christ Decl. ¶ 8; Am. Compl. ¶ 49; docket entry no. 16-4.)

[4]    Plaintiff avers that it made the appeal on October 25, 2022, but Defendant states that it received it on or about October 27, 2022.  (Christ Decl. ¶ 9; Am. Compl. ¶ 54; docket entry no. 16-5.)

Servs., No. 23-CV-1997-PAE, 2025 WL 936924, at *7 (S.D.N.Y. Mar. 27, 2025) (applying summary judgment standard in FOIA case at a similar posture); Lantry v. Kendall, No. 23-CV-0473-RDM, 2024 WL 1366788, at *4 (D.D.C. Mar. 31, 2024) (same); Clay v. Dep't of Army, 239 F. App'x 705, 706 (3d Cir. 2007) (same); see also Fams. for Freedom v. U.S. Customs & Border Prot., 837 F. Supp. 2d 287, 292 (S.D.N.Y. 2011) ("FOIA cases are generally and most appropriately resolved on motions for summary judgment.").

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  When determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party.  Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)).

"FOIA specifies that a district court must conduct de novo review of an agency's claims to exemptions." Adelante Ala. Worker Ctr. v. U.S. Dep't of Homeland Sec., 376 F. Supp. 3d 345, 354-55 (S.D.N.Y. 2019) (quoting Lee v. Fed. Deposit Ins. Corp., 923 F. Supp. 451, 453 (S.D.N.Y. 1996)).  "In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." Carney v. U.S. Dep't of Just., 19 F.3d 807, 812 (2d Cir. 1994).  "Affidavits or declarations supplying facts indicating that the agency has

conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden."[5] Id. (citations omitted).  "Summary judgment is warranted on the basis of agency affidavits [or declarations] when the affidavits [or declarations]," which are also referred to as Vaughn Indices,[6] "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Wilner v. Nat'l Sec. Agency, 592 F.3d 60, 73 (2d Cir. 2009) (quoting Larson v. Dep't of State, 565 F.3d 857, 862, 870 (D.C. Cir. 2009)).  "[C]onclusory affidavits [or declarations] that merely recite statutory standards, or are overly vague or sweeping will not . . . carry the government's burden." Reclaim the Recs., 2025 WL 936924, at *8 (quoting Larson, 565 F.3d at 864).  That said, these affidavits and declarations are "accorded a presumption of good faith."  Id. (quoting Carney, 19 F.3d at 812).  In order to defeat summary judgment once the defendant has met its burden, "the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate."  Carney, 19 F.3d at 812 (collecting cases).

Courts may conduct in camera review of documents to evaluate an agency's claimed exemptions.  However, "[a] district court should not undertake in camera review of

---

[5]     Defendant need not submit a Local Rule 56.1 statement, as "'the general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment,' and Local Civil Rule 56.1 statements are not required."  N.Y. Times Co. v. U.S. Dep't of Just., 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (quoting Ferguson v. Fed. Bureau of Investigation, No. 89-CV-5071-RPP, 1995 WL 329307, at *2 (S.D.N.Y. June 1, 1995), aff'd, 83 F.3d 41 (2d Cir. 1996)).

[6]     So named after the case Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with [the standards set forth above]." Seife v. U.S. Dep't of State, 298 F. Supp. 3d 592, 630 (S.D.N.Y. 2018) (quoting Spirko v. U.S. Postal Serv., 147 F.3d 992, 997 (D.C. Cir. 1998)). "In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." Local 3, Int'l Bhd. of Elec. Workers v. N.L.R.B., 845 F.2d 1177, 1180 (2d Cir. 1988) (citing Donovan v. Fed. Bureau of Investigation, 806 F.2d 55, 59 (2d Cir. 1986)).

A.    Plaintiff's Procedural FOIA Claims

First, Plaintiff contends that Defendant violated various provisions of 5 U.S.C. section 552(a)(6)-(7), which set out procedural requirements and deadlines for responding to FOIA requests. Specifically, Plaintiff contends that Defendant violated 5 U.S.C. section 552(a)(6)(A)(i) by failing to provide a timely determination (i.e., within twenty working days) of Plaintiff's January 12, 2022 FOIA request; that Defendant violated 5 U.S.C. section 552(a)(6)(B)(ii) by failing to provide a timely determination (i.e., within twenty working days) of Plaintiff's October 25, 2022 FOIA appeal; and that Defendant violated 5 U.S.C. section 552(a)(7)(B)(ii) ("Section 552(a)(7)(B)(ii)") by failing to provide an "estimated date on which the agency [would] complete action on [Plaintiff's] request." (Am. Compl. ¶¶ 61-63.) Plaintiff seeks declarations that Defendant failed to perform required acts in a timely manner and violated the foregoing provisions. (Id. at 13-14.)

Setting aside whether Defendant properly complied with the requirements of 5 U.S.C. section 552(a)(6) ("Section 552(a)(6)"),[7] Plaintiff has no claim under that statute because

---

[7]    Defendant contests Plaintiff's contention that it failed to timely respond to Plaintiff's January 12, 2022 FOIA request. See supra note 2.

"FOIA does not create a separate legal right to recover damages or any other form of relief solely based on the fact that the agency in question failed to comply with [the] time limits [in 5 U.S.C. section 552(a)(6)(i)]." Pendell v. U.S. Secret Serv., No. 18-CV-0352-GTS, 2019 WL 6840125, at *7 (N.D.N.Y. Dec. 16, 2019); see Carmody & Torrance v. Def. Cont. Mgmt. Agency, 11-CV-1738-JCH, 2014 WL 1050908, at *6 (D. Conn. Mar. 13, 2014) ("[U]ntimeliness is not a per se statutory violation entitling the requester to any specific remedy."). Rather, an agency's violation of Section 552(a)(6)'s deadlines merely enables a FOIA requestor to "immediately seek relief on the requestor's underlying FOIA claim (i.e., the unwarranted withholding of requested records) [in federal court,] without first exhausting the administrative remedies provided by FOIA." Pendell, 2019 WL 6840125, at *7; see Elec. Priv. Info. Ctr. v. Dep't of Just., 15 F. Supp. 3d 32, 41 (D.D.C. 2014) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." (quoting Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n, 711 F.3d 180, 189 (D.C. Cir. 2013))).

As to Plaintiff's claim under Section 552(a)(7)(B)(ii), Plaintiff merely alleges that SSA was required to provide "an estimated date on which the agency [would] complete action on [Plaintiff's FOIA] request." (Am. Compl. ¶ 62.) Aside from the general allegation that SSA failed to respond to the requests, Plaintiff identifies no action and alleges no injury or request for relief particular to the estimated date requirement. See Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) (reciting the requirements for standing). Accordingly, Defendant is entitled to summary judgment dismissing Plaintiff's claim to the extent it is premised on noncompliance with Section 552(a)(7)(B)(ii). See, e.g., Ctr. for Biological Diversity v. U.S. Env't Prot. Agency, 279 F. Supp. 3d 121, 153-55 (D.D.C. 2017) (granting summary judgment against a Section

552(a)(7)(B)(ii) claim); Hawkinson v. Immigr. & Customs Enf't, 554 F. Supp. 3d 253, 283-84

(D. Mass. 2021) (same); Rojas v. Fed. Aviation Admin., 407 F. Supp. 3d 856, 859 (D. Ariz.

2019) (same).[8]

Therefore, Defendants are entitled to summary judgment dismissing Plaintiff's

procedural FOIA claims.

B.    Plaintiff's Substantive FOIA Claim and FOIA Exemption 3

Next, the Court turns to Plaintiff's claim that Defendant improperly withheld

documents in violation of 5 U.S.C. section 552(a)(3).  Defendant raises various exemptions

under 5 U.S.C. section 552(b) as justifications for withholding the documents listed in the

privilege log, but the dispositive one here is 5 U.S.C. section 552(b)(3) ("Exemption 3").

Under FOIA Exemption 3, Defendant need not disclose materials that are

"specifically exempted from disclosure by statute . . . , if that statute—(A)(i) requires that the

matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establishes particular criteria for withholding or refers to particular types of matters to be

withheld[.]"  5 U.S.C. § 552(b)(3)(A).  "Exemption 3 differs from other FOIA exemptions in that

its applicability depends less on the detailed factual contents of specific documents; the sole

---

[8]    Plaintiff's claim was brought under FOIA, as opposed to the Administrative Procedure
Act, 5 U.S.C.A. § 701 et seq. (Westlaw through P.L. 119-80), or the Mandamus Act, 28
U.S.C. § 1361.  The Court notes that there appears to be an open question—which was
not addressed by either party—of whether FOIA, specifically 5 U.S.C. section
552(a)(4)(B), vests federal courts with jurisdictional authority to grant declaratory or
injunctive relief to enforce 5 U.S.C. section 552(a)(7)(B).  See Leopold v. Dep't of Def.,
752 F. Supp. 3d 66, 94, 95-96 (D.D.C. 2024) (expressing skepticism but reserving
judgment); Hawkinson, 554 F. Supp. 3d at 280-81 (citing Muttitt v. U.S. Cent.
Command, 813 F. Supp. 2d 221, 227-28 (D.D.C. 2011) (holding that Section
552(a)(4)(B) vests jurisdictional authority).

issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Wilner, 592 F.3d at 72.

In support of its Exemption 3 argument, Defendant points to 5 U.S.C. section 7114(b)(4)(C) ("Section 7114(b)(4)(C)"), which provides:

> The duty of an agency . . . to negotiate in good faith under subsection (a) of this section shall include the obligation . . . to furnish to the exclusive representative[9] involved, or its authorized representative, upon request and, to the extent not prohibited by law, data . . . which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining . . . .

5 U.S.C. § 7114(b)(4)(C); (see Def. Mem. at 13-15). This statutory provision "is a statute within the meaning of Section (b)(3) of the FOIA." Dubin v. Dep't of Treasury, 555 F. Supp. 408, 412 (N.D. Ga. 1981), aff'd, 697 F.2d 1093 (11th Cir. 1983); see also Nat'l Treasury Emps. Union v. Off. of Pers. Mgmt., No. 79-CV-0695-TAF, 1979 U.S. Dist. LEXIS 15411, at *5 (D.D.C. July 9, 1979) ("[T]hese provisions [Section 7114(b)(4)(C) and 5 U.S.C. section 7132[10]] exempt the materials at issue in this case from disclosure pursuant to Subsection (B) of exemption (b)(3).").

Defendant logically and plausibly explains that the documents at issue fall within the scope of Section 7114(b)(4)(C). As Defendant explains, Executive Order 14003 contemplated changes and updates to collective bargaining agreements to reflect the revocation and recission of the 2017 Executive Orders. (Def. Mem. at 14.) The Christ Declaration affirms

---

[9]    An "exclusive representative" "means any labor organization which—(A) is certified as the exclusive representative of employees in an appropriate unit pursuant to section 7111 of this title; or (B) was recognized by an agency immediately before the effective date of this chapter as the exclusive representative of employees in an appropriate unit—(i) on the basis of an election, or (ii) on any basis other than an election, and continues to be so recognized in accordance with the provisions of this chapter[.]" 5 U.S.C. § 7103(a)(16).

[10]   5 U.S.C. section 7132 provides that "[n]o subpena shall be issued under this section which requires the disclosure of intramanagement guidance, advice, counsel, or training within an agency or between an agency and the Office of Personnel Management."

that all of the withheld documents relate to "guidance, advice, and counsel directly relating to collective bargaining that was ordered by Executive Order 14003." (Christ Decl. ¶ 14.) This representation is consistent with the descriptions of the documents in the Agency Privilege Log (Christ Decl. Ex. 1, at 4), as well as the facts that all of the documents were created after the issuance of Executive Order 14003 on January 22, 2021 (id.); that all of the documents were authored by top OLMER employees or by OLMER itself (Am. Compl. ¶ 38); that all of the documents were sent to OLMER or to "Employee Relations/Labor Relations" (Christ Decl. Ex. 1, at 4); and that OLMER provides guidance and advisory services on a broad range of labor management and employee relations issues, including on collective bargaining agreements (Christ Decl. ¶¶ 12-13).

Accordingly, Defendant has met its burden of showing that it is entitled as a matter of law to summary judgment dismissing the claim of wrongful withholding, because FOIA Exemption 3 applies. See Wilner, 592 F.3d at 73. Thus, to defeat summary judgment, Plaintiff must "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." Carney, 19 F.3d at 812 (collecting cases). Both of Plaintiff's arguments miss the mark.

First, Plaintiff argues that the documents at issue cannot relate to collective bargaining because "there was no pending collective bargaining at the time EO [Executive Order] 140003 [sic] was issued [on January 22, 2021]" and "there is nothing in EO 14003 or its Guidance that mandated immediate collective bargaining." (Pl. Opp. at 13.) According to Plaintiff, the "references to collective bargaining in Executive Order 14003 are generic," and that it was only "after the issuance of the detailed Guidance of Implementation of Executive Order

14003 [on March 5, 2021]," that the prospect of collective bargaining—and any concomitant guidance, advice, counsel, or training—could have materialized. (Id. at 13-14.) Furthermore, Plaintiff avers that the March 5, 2021 Guidance did not even require collective bargaining. (Id. at 14.)

This argument fails to meet Plaintiff's burden. Nothing in Section 7114(b)(4)(C) limits that statute to pending or immediate collective bargaining. See 5 U.S.C. § 7114(b)(4)(C) (excluding "guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining" (emphasis added)). Moreover, Plaintiff's interpretation of Executive Order 14003 fails to rebut Defendant's proffered explanation. Nothing in Executive Order 14003 indicated that further detailed guidance would issue, and nothing in Executive Order 14003 precluded Defendant from starting to consider the implications of the order for collective bargaining. Indeed, and contrary to Plaintiff's arguments, Executive Order 14003 specifically directed agencies to review their collective bargaining agreements for changes caused by the 2017 Executive Orders and to revise their collective bargaining agreements accordingly. Executive Order 14003 directed agencies to "review and identify existing agency actions related to or arising from" the 2017 Executive Orders, 86 Fed. Reg. 7231 § 3(e) (Jan. 22, 2021), and to "as soon as practicable, suspend, revise, or rescind, or publish for notice and comment proposed rules suspending, revising, or rescinding, the actions identified in the review described in subsection (e)," id. at 7232 § 3(f). This process included review and revision of "[a]ctions related to the authorization of union time," id. at 7231 § 3(e)(i); "[r]evisions to discipline and unacceptable performance policies, including ones codified in bargaining agreements," id. at 7232 § 3(e)(v); and "[a]ctions taken pursuant to section 8 of Executive Order 13837," id. § 3(e)(iv), which in turn had directed agencies to effectuate

Executive Order 13837 by renegotiating or terminating collective bargaining agreements that were inconsistent with Executive Order 13837,[11] 83 Fed. Reg. 25335 § 8(b) (May 25, 2018). Plaintiff's assertions that agencies could formulate no management guidance response to Executive Order 14003 until official Guidance was issued, and its insistence that no guidance within the meaning of Exemption 3 could be developed outside of the context of active collective bargaining, are not supported by any authority and are facially inconsistent with the Executive Order and the relevant statute.

Second, Plaintiff contends that the Christ Declaration fails to satisfy the requirements for a Vaughn Index.  (Pl. Opp. at 14-15.)  Plaintiff faults the Christ Declaration for "fail[ing] to present a list of each record withheld in whole or in part with identifying characteristics such as title, date, addressor/addressee and general subject matter."  (Id. at 15.) But the Christ Declaration did just that, by providing the Agency Privilege Log (Christ Decl. ¶ 14; Christ Decl. Ex. 1, at 4).[12]  The Agency Privilege Log provides "fact-specific justification[s]" that "permit [Plaintiff] to contest the affidavit in adversarial fashion" and "permit a reviewing court to engage in effective de novo review of the [withheld] information." Cox v. Dep't of Just., 504 F. Supp. 3d 119, 128 (E.D.N.Y. 2020) (quoting Halpern v. Fed. Bureau of Investigation, 181 F.3d 279, 293 (2d Cir. 1999)), aff'd, 111 F.4th 198 (2d Cir. 2024).

---

[11]     In full, that provision of Executive Order 13837 read: "Each agency shall consult with employee labor representatives about the implementation of this order. On the earliest date permitted by law, and to effectuate the terms of this order, any agency that is party to a collective bargaining agreement that has at least one provision that is inconsistent with any part of this order shall give any contractually required notice of its intent to alter the terms of such agreement and either reopen negotiations and negotiate to obtain provisions consistent with this order, or subsequently terminate such provision and implement the requirements of this order, as applicable under law."  83 Fed. Reg. 25335 § 8(b) (May 25, 2018).

[12]     It is of no import that the Christ Declaration "simply referred" to the Agency Privilege Log and did not reproduce it within the body of the Declaration.  (Cf. Pl. Opp. at 15.)

"Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Wilner, 592 F.3d at 73 (quoting Larson, 565 F.3d at 864). Defendant has met that burden by proffering the Christ Declaration. Plaintiff's arguments, which amount to a competing and unsupported interpretation of Executive Order 14003, are meritless and unsubstantiated. For that same reason, Plaintiff's request, in the alternative, for in camera inspection is denied. See Local 3, 845 F.2d at 1180 ("In camera review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion.").

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. This Memorandum Opinion and Order resolves docket entry no. 14. The Clerk of Court is respectfully directed to enter judgment dismissing the Amended Complaint in its entirety, and to close this case.

SO ORDERED.

Dated: New York, New York
         March 31, 2026

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge